**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

KIMBRA JO SIMS                                                                    PLAINTIFF

v.                                    CASE NO. 3:13CV00119 BSM

TENNECO AUTOMOTIVE OPERATING
COMPANY, INC.                                                                    DEFENDANT

<u>ORDER</u>

The motion for summary judgment filed by Tenneco Automotive Operating Company Inc. ("Tenneco") [Doc. No. 47]  is granted and Kimbra Sims's claims are dismissed with prejudice.

I. FACTUAL BACKGROUND

Viewing the record in the light most favorable to plaintiff Kimbra Sims, the non-moving party, the facts are as follows.  Sims began working at Tenneco on May 16, 1995. Beginning in 2008 and lasting until 2012, Sims had multiple conflicts with her co-workers. Although it is unclear what caused all of the confusion, it appears that a number of Tenneco employees engaged in heated arguments and profane name-calling.  Sims Dep. 102:23–25, 103:1–2 [Attached as Exhibit 1 to Doc. No. 47]; Murphy Dep. 19:9–13 [Attached as Exhibit 4 to Doc. No. 47]; Cunningham Dep. 22:23–25 [Attached as Exhibit 5 to Doc. No. 47]. Human resources attempted to end the conflicts by meeting with Sims and her co-workers on multiple occasions.

Sims filed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") on May 3, 2011, alleging she was subjected to a hostile work environment by her black co-workers because she is white. The EEOC issued a right-to-sue letter but Sims took no action due to a more "tolerable" work environment. EEOC Ltr., Sept. 22, 2011 [Attached as Exhibit 18 to Doc. No. 47]; Sims Dep. 94:8–23.

On March 12, 2012, Sims was placed on probation for ninety days for excessive absenteeism. Four days later, Sims was tentatively approved for Family Medical Leave Act ("FMLA") leave, pending her submission of medical certification. MetLife Ltr. to Sims 1 [Attached as Exhibit 21 to Doc. No. 47]. Sims did not submit the medical certification and Tenneco did not remove her absences that pre-dated the approval of her FMLA leave. Sims Dep. 32:6–14, 35:11–14. During the approved leave period, Sims took weeks of intermittent leave to address her health condition. When she would return to work, problems with her co-workers often resurfaced. Hewlett Dep. 23:11–14 [Attached as Exhibit 6 to Doc. No. 47]; Sims Dep. 151:12–19. On July 16, 2012, Sims called Tenneco's ethics hotline to report retaliation and a hostile work environment.

Sims began short-term disability leave in May 2012, and Tenneco notified Sims in writing on November, 27, 2012, that her short-term leave benefits would expire in December. In the same document, Tenneco informed Sims that if she "[was] unable to return to work at the end of [her] period of leave, [her] employment with Tenneco [would] end[] and [she would] be eligible for long-term disability benefits." Tenneco Ltr. to Sims, November 27, 2012 [Attached as Exhibit 13 to Doc. No. 47]. When her short-term disability

leave expired, Sims began receiving long-term disability benefits.  Since she could not return to work at the end of her short-term leave, her employment at Tenneco ended and Sims never sought to return to work.  Sims Second Dep. 23:6–24 [Attached as Exhibit 2 to Doc. No. 47].  Sims filed an EEOC charge against Tenneco in December 2012, alleging discrimination and retaliation under the FMLA, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the Arkansas Civil Rights Act ("ACRA").  She received a right to sue letter and timely filed suit.  Defendants now move for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986).  Once the moving party demonstrates there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings.  *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute that must be resolved at trial.  *Id.*  Importantly, when considering a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the non-moving party.  *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).  Additionally, the evidence is not weighed, and no credibility determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

### III. DISCUSSION

A.   <u>Family and Medical Leave Act Claims</u>

Sims alleges that Tenneco violated her rights under the FMLA based on entitlement and discrimination theories.   Summary judgment is granted because she was never improperly denied FMLA leave, and she has failed to demonstrate any specific link between the exercise of her FMLA rights and Tenneco's adverse employment action.

*1. Entitlement*

Sims asserts that Tenneco interfered with her FMLA rights by failing to authorize FMLA leave for certain absences.  To state a claim for entitlement or interference, Sims must show she notified defendants of her need for FMLA leave.  *Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 785–86 (8th Cir. 2009).  This notice is required before an employer's duties are triggered under the FMLA.  *Id*. at 786.  After an employee either requests FMLA leave or an employer receives knowledge that the employee's leave may be for a FMLA-qualifying reason, the employer is then required to provide an employee with notice of her eligibility, rights and responsibilities, and how leave will be designated.  *See* 29 C.F.R. § 825.300.  For example, employers are entitled to require employees seeking FMLA leave to submit medical documentation of the need for leave.  *Kobus v. College of St. Scholastica, Inc.*, 608 F.3d 1034, 1038 (8th Cir. 2010).  Although Sims was not required to invoke the FMLA by name, she was required to provide enough information to suggest that her health condition might be serious so that Tenneco could distinguish her absence from ordinary sick days.  *Scobey*, 580 F.3d at 786.

Summary judgment is granted on Sims's entitlement claim because Sims fails to demonstrate that Tenneco improperly refused to authorize FMLA leave.  The record shows that Tenneco asked Sims to provide medical certification as proof of her need for leave and that she failed to do so.  MetLife Ltr. to Sims 1. Indeed, Tenneco was prepared to correct certain absences that occurred before Sims's approved FMLA-leave period, if she had only provided documentation.  Diggs Aff. 2 [Attached as Exhibit 11 to Doc. No. 47].  Thus, Sims has failed to show that she was denied a proper request for FMLA leave.

## 2. Discrimination

Summary judgment is also granted on Sims's claim that Tenneco discriminated against her for taking FMLA leave because Sims's FMLA leave did not play a part in the termination of her employment.  To establish a prima facie case of discrimination (often classified as retaliation) under the FMLA, Sims must show: (1) she engaged in activity protected under the Act, (2) she suffered an adverse employment action, and (3) a causal connection exists between her exercise of rights and the adverse employment action.  *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1007 (8th Cir. 2012).  To demonstrate a causal link, an employee must prove that her exercise of FMLA rights played a part in the employer's decision.  *See Pulczinski*, 691 F.3d at 1007.  If Sims establishes a prima facie case, the burden then shifts to Tenneco to articulate a legitimate, non-discriminatory reason for the decision to terminate her. *Wierman v. Casey's General Stores*, 638 F.3d 984, 999 (8th Cir. 2011)(evaluating FMLA claim under the *McDonnell Douglas* framework).  Once Tenneco has done so, Sims must then demonstrate that the employer's

reason is pretextual.  *Id*.

Although Sims took FMLA leave in 2011 and 2012, nothing indicates that this played a role in Tenneco's decision to end her employment.  Tenneco ended Sims's employment in January 2013, several months after Sims exhausted her FMLA leave.  What is clear is that even after the expiration of her FMLA and short-term disability leave, Tenneco gave Sims an opportunity to return to work.  Tenneco Ltr. to Sims, November 27, 2012; MetLife Ltr. to Sims, March 1, 2013 [Attached as Exhibit 15 to Doc. No. 56].  Summary judgment is therefore appropriate because no reasonable fact-finder could conclude that a causal connection existed between Sims's exercise of FMLA rights and Tenneco's adverse action.

Even if Sims could establish a prima facie case of discrimination, Tenneco has articulated a legitimate, non-discriminatory reason for her termination.  Tenneco terminated Sims's employment because Sims was unable to work.  Diggs Dep. 56–57 [Attached as Exhibit 3 to Doc. No. 47].  Indeed, Tenneco notified Sims it was company policy that employees will be terminated after receiving short-term disability leave if they are unable to return to work.  Tenneco Ltr. to Sims, November 27, 2012.  Sims could not return to work after her short term disability leave and, based on the record, she is still unable to return to work.  *See* Sims Dep. 45:4; 167:1–22.

B.   Americans with Disabilities Act Claims

*1. Discrimination*

Summary judgment is also appropriate on Sims's ADA claims because she is not a qualified individual under the Act.  Under the ADA, covered employers cannot discriminate

against any "qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  To establish an ADA claim, Sims must show that she: (1) is disabled within the meaning of the Act, (2) is a qualified individual, and (3) has suffered an adverse employment action because of her disability.  *E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2014). A qualified individual with a disability is a person with a disability who, with or without reasonable accommodation, can perform the essential functions of the current or desired position.  *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1021 (8th Cir. 1998). Further, Sims must have been a qualified individual at the time of the discriminatory action. *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1048 (8th Cir. 1999).

It is undisputed that Sims fails to meet the "qualified individual" element because she cannot perform the job in question, even with a reasonable accommodation.  Sims testified she was unable to return to Tenneco when her medical leave expired, and she cannot currently work for Tenneco or any other employer due to her disability. Sims Dep. 45:2–11. Tenneco is therefore entitled to summary judgment on Sims's ADA discrimination claim.

## 2. *Hostile Work Environment*

Sims claims that she was subject to a hostile work environment in violation of the ADA. To prove an ADA hostile work environment claim, Sims must show: (1) she is a member of a class of people protected by the statute, (2) she was subject to unwelcome harassment, (3) the harassment resulted from her membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions, or privileges of her

employment. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003). Although one may conclude that a hostile work environment was created as a result of the heated exchanges between Sims and her co-workers (whether this environment was caused by Sims or her co-workers is disputed), summary judgment is granted on this claim because the ADA only protects qualified individuals with a disability and, as set forth above, Sims is not a qualified individual. *See* 42 U.S.C. § 12112(a).

### 3. Rehabilitation Act

Sims also alleges a claim under the Rehabilitation Act of the ADA. To prevail on this claim, however, Sims must establish that she is a qualified individual. *See Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). In that Sims cannot perform the "essential job functions, with or without accommodation," she is not a qualified individual and summary judgment is appropriate on this claim. *Id.*

### C.   Age Discrimination in Employment Act Claim

Tenneco is also entitled to summary judgment on Sims's ADEA claim because there is no evidence supporting it. The ADEA protects individuals aged 40 and over by prohibiting employers from discharging or otherwise discriminating against them because of their age. *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011). To prove this claim, Sims must show she: (1) was at least 40 years old, (2) was terminated, (3) was meeting her employer's reasonable expectations at the time she was terminated, and (4) was replaced by a substantially younger person. *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d

639, 642 (8th Cir. 2008).  In short, she must establish that age was the "but-for" cause of the adverse employment action.  *Haigh*, 632 F.3d at 468.

Sims alleges that she is over forty-years old and that Tenneco failed to "properly discipline similarly situated younger co-workers who violated Tenneco's policy  against hostile work environment and retaliation."  Sims Am. Compl. 6.  Nothing in the record indicates that Sims was treated differently than younger workers or that she was replaced by a younger person.  Diggs Dep. 65–67 (discussing the similar discipline measures taken against Sims and her co-workers alike).  Further, the record clearly shows that Sims was physically unable to meet (and therefore was not meeting) Tenneco's reasonable expectations at the time of her discharge.  Sims Dep. 45:8–11.  Summary judgment is therefore appropriate.

D.     Arkansas Civil Rights Act

Sims alleges that Tenneco retaliated against her in violation of the ACRA. Sims's retaliation claims are subject to the burden shifting framework of *McDonnell Douglas*, as discussed in Section III.A.2.  Thus, to state a claim for retaliation under the ACRA, Sims must show she engaged in protected activity, she suffered an adverse employment action, and there is a causal link between the activity and the adverse action.  *Burkart v. American Railcar Industries, Inc.*, 603 F.3d 472, 477 (8th Cir. 2010).  A gap in time between the protected activity and the adverse employment action weakens the inference of retaliatory motive.  *Id.*

Sims cannot prevail on her ACRA claim for the same reasons she cannot prevail on

her FMLA discrimination claim:  there is no evidence of a causal connection between her protected activities and Tenneco's adverse employment action.  Though Sims does not specifically enumerate the protected activities in which she engaged, it appears that she participated in two: filing a Charge of Discrimination with the EEOC in May 2011,  and calling the Tenneco ethics hotline in July 2012.  She initiated both activities several months before Tenneco terminated her employment.  Though Sims received a right to sue letter from the EEOC on September 22, 2011, Sims did not file a lawsuit and, according to the record, continued to work without incident for several months thereafter.

Sims filed the EEOC charge more than twenty months before her termination and placed the hotline call more than five months before her termination. Additionally, the record contains no evidence that Sims's termination had any connection to the EEOC or the hotline call.  Summary judgment is, therefore, proper on Sims's ACRA claim.

## IV. CONCLUSION

For the reasons discussed above, Tenneco's motion for summary judgment [Doc. No. 47] is granted and Sims's claims are dismissed with prejudice.

IT IS SO ORDERED this 12th day of January 2015.


_____
UNITED STATES DISTRICT JUDGE